S. Samuel Di Falco, S.
In this discovery proceeding, the Public Administrator, as administrator of the estate of the decedent, seeks an order determining that the decedent was the sole stockholder of Buenavista Investment Corp., Inc., and that none of the respondents is a stockholder of that corporation. He asks that the respondents Garcia and Gaffney be directed to deliver to him the shares of stock of that corporation which are alleged to have been owned by the decedent, and that respondent Garcia deliver to him the sum of $1,350,000 (less the sum of $110,000 heretofore the subject of an intermediate order) as property of the decedent’s wholly owned corporation which was allegedly diverted by the respondent. The Boyal Bank of Canada, a New York corporation, was made a respondent because it was alleged to have knowledge of the estate assets. It has been examined. No further relief is sought against it. However, it moves to dismiss the petition on the ground that this court lacks jurisdiction of the matter and on the further ground that the estate of the decedent’s deceased wife is a necessary party.
Many of the background facts seem not to be in dispute. The decedent died on April 3, 1963 in Madrid, Spain. For many years prior to his death he had resided in Cuba and had successfully built several business enterprises. When the familiar changes occurred in the government of Cuba, the decedent came to New York, where he lived for a period of time. After his wife’s death, he left New York for Spain where he remained until his death. The bank contends that he was domiciled in Spain at the time of his death. The Public Administrator had alleged in his petition that the decedent was domiciled in New York, but he now contends that the place of domicile is not material in the pending discovery proceeding.
One of the corporations created by the decedent was Buenavista Investment Corp., which was organized under the laws of the Bepublic of Panama. Thirty shares of stock were issued and are outstanding. There can be no doubt that the decedent was the owner of all of the shares. The corporation is described by the Public Administrator as a personal holding company, and at and after the time of the decedent’s death, it had more than one million dollars on deposit with the Boyal Bank of Canada.
*124 In the year 1960 it was suggested to the decedent that some of his Cuban assets, including holdings of Buenavista, be transferred to American citizens, that a resolution to that effect by officers and directors of the corporation was necessary, and that the meeting at which such action was taken should be predated to make it appear that it occurred before the Castro advent to power. The officers of the corporation had been chosen by the decedent’s representative in Panama, and the decedent held all of their undated resignations. It was suggested that the resignation of these officers and directors be accepted and that the decedent and two other persons be elected. A meeting of the corporation was arranged and was held in New York City. The corporate minutes made it appear that the decedent, Gaffney and Garcia were holders of shares of stock. The stock certificates were in bearer form and it was thus an easy matter to make it appear that those attending the meeting were stockholders. The decedent was elected president. The other new directors and officers were respondents Garcia and Gaffney.
The respondent Gaffney ostensibly held 10 of the 30 shares of stock, but he concedes in this proceeding that at no time did he have any real beneficial ownership of the shares and he claims no interest in the corporation. He is an attorney, and he acted solely for his client, the decedent. However, respondent Gaffney does not have the certificates in his possession at the present time. A few days after the death of the decedent, respondents Garcia and Gaffney met with the decedent’s former Cuban attorney, Manuel Felipe Camocho, in the City of New York. At that meeting three certificates representing all 30 shares of stock were produced. At the end of the meeting the 10 shares held by Mr. Gaffney disappeared, and he does not know where they are at this time. It is clear on this record that although he was listed in the corporation minutes as a stockholder, he did not have and does not now claim to have been the owner of the shares of stock ascribed to him.
The respondent Garcia was also listed as a stockholder. The Public Administrator charges that he withdrew more than a million dollars from the corporate account, and that he deposited these funds in his own account in Switzerland. Respondent Garcia was duly served with a discovery order in this State, and he appeared by counsel in this discovery proceeding. He submitted to examination, and, personally and' by attorney, he took active part in the proceedings. An intermediate decree was entered directing delivery by him to the Public Administrator of $110,000 and certain jewelry. Thereafter respondent Garcia left New York for South America; he revoked the authority of *125 his attorney to appear for him; and he took no further part in the proceedings. In view of the serious charges against him, his flight and his dismissal of counsel are not without significance.
The evidence satisfies the court that respondent Garcia, like respondent Gaffney, was merely an agent of the decedent, that he had no beneficial interest in the shares of stock, and that he was listed as a .stockholder in the corporate minutes only to carry out the plan of which he was one of the authors. He was not an owner of the shares of stock ascribed to him, and he has no right to withhold such shares from the decedent or his estate.
The respondent Royal Bank of Canada has no real interest in this controversy. Its real interest, as a depositary of the funds, is in other litigation in other forums. It merely points out here, so it says, a lack of jurisdiction of the subject matter. It claims that the decedent is a nondomieiliary of New York, that the stock certificates are not now within the State of New York, and that the corporation is a Panamanian entity over which the court has no jurisdiction. The respondent bank concedes that this court had jurisdiction to issue letters, but it contends there is no jurisdiction to proceed with this discovery. We may assume — as indeed we must for the purposes of this motion — that the decedent was not domiciled in New York at the time of his death and that the location of the certificates of stock is not now known. They may be in the State of New York; they may be elsewhere. If their actual presence in this State at this moment were essential to jurisdiction, we would not be justified in asserting it. Moreover, we have no power to control the foreign corporation or its acts and transactions. All this may be conceded. What we do have, however, is in personam jurisdiction over respondents Thomas A. Gaffney and Carlos Garcia and over the fiduciary appointed in this State to administer in this State the assets of the decedent found here.
The property of the decedent which is the subject of this proceeding, namely the stock certificates, was in the City of New York after the death of the decedent. That property was wrongfully taken after the decedent’s death. The claim against the respondents constitutes property within the State. (Surrogate’s Ct. Act, § 47; Matter of Atychides, 26 Misc 2d 898.) The respondent Garcia, after having litigated the issue as long as it suited his purpose, has fled this jurisdiction. The three certificates were produced at a meeting in New York City after the decedent’s death, clipped together just as they were when the decedent last attended a meeting. At that point of time they disappeared. There were only three persons who could *126 have taken the shares. There is no suggestion that Dr. Camocho took any of them. The respondent Gaffney testified that he did not take any of them. These statements have not been contradicted, and this state of facts leaves the respondent Garcia, who has fled, as the person who must have taken possession of all of the decedent’s stock certificates. The court, having acquired in personam jurisdiction, has undoubted power to direct him to deliver these stock certificates to the petitioner.
The Public Administrator asks the court to direct respondent Garcia to pay to him $1,350,000, less the sum of $110,000 heretofore directed to be paid. This court has no authority to direct the respondent to deliver to the decedent’s personal representative funds which belong to a foreign corporation. The money belongs to the corporation and it has a right of action against the wrongdoer to recover them. While for some purposes the court may ignore the corporate form of a wholly owned estate corporation, it may not do so with respect to a foreign corporation which has issued bearer shares and which may have obligations unknown to this court or to the parties. This court, however, does have authority to make a decree directing respondent Garcia to deliver the shares “ or, if the property shall have been diverted or disposed of, the decree may direct payment of the proceeds or value of such property or may impress a trust upon said proceeds or make any determination which a court of equity might decree in following trust property or funds.” (Surrogate’s Ct. Act, § 206.)
The proceeds of sale of shares of stock or the value of shares of stock are quite different things from the damage to the corporation by the diversion of its assets. If one who converts shares of stock should sell such shares, he can be directed to pay the proceeds to the fiduciary. If he has disposed of them for less than their fair value, he can be directed to pay the value of such .shares to the fiduciary. He may still be under further liability to the corporation for injury to its property. With that liability we are not here concerned. We deal here only with the shares, their ‘ proceeds or value. ’ ’
The evidence makes it clear that the 30 shares of Buenavista had a value at decedent’s death in excess of one million dollars. The withdrawals made by respondent Garcia from the Buenavista account after decedent’s death plus the balance in the account establishes a value of at least $1,322,209.61. The shares might have had an even greater value.' They may, it is true, have had less value if some of the withdrawals were properly made, but respondent Garcia has chosen to flee rather than to explain. The court, therefore, fixes the value of the shares in *127 the amount stated, but there must also be taken into account the sum stated in the intermediate decree.
The court determines that as at the time of his death the decedent was the owner of all of the outstanding shares of stock of Buenavista Investment Corp., Inc. The decree will direct respondent Garcia to deliver to the petitioner the certificates for the 30 shares of stock of that corporation or the value of such shares as hereinabove fixed. It will direct respondent Gaffney to deliver to the petitioner, in satisfactory form, a surrender of all right, title or claim to these shares of stock, and to execute any further instruments that may be required to vest the estate with full title to the ten shares ascribed to him.
The contention of the respondent bank that the estate of the deceased wife is a necessary party to this discovery proceeding is without merit. The administrator of the wife’s estate has submitted an affidavit in this proceeding in which he states that his claim to the stock is 1 based entirely on the community rights of the wife ”, and he explicitly consents to the delivery of the stock by Garcia and Gaffney to the petitioner. He expressly states that he will confine his claim to the estate of the deceased husband and will make no claim against the respondents. In the face of this disclaimer, it is hardly fitting for one who makes no claim to the property at all to insist that the other come in as a party litigant.